UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| CHADWICK ADDIE, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:16-CV-513 JD |
| CAREER ACADEMY OF SOUTH BEND, INC., et al. | ) |
| Defendants. | ) |

## OPINION AND ORDER

Chadwick Addie lost his job as director of development for a charter school when it eliminated his position. The school says it cut his position (along with other positions and costs) to balance its budget. Mr. Addie claims that explanation was false. The real reasons, he claims, were age discrimination and retaliation. He has not provided evidence from which a jury could draw such an inference, though. The Court thus grants summary judgment.

### I. FACTUAL BACKGROUND

The Court must begin with a comment about a party's obligations in responding to a motion for summary judgment. Under Rule 56, a party must "cit[e] to *particular parts* of materials in the record" in support of its arguments. Fed. R. Civ. P. 56(c)(1). That rule means what it says. A party does not satisfy that requirement by attaching exhibits to a brief, or by referring in general to large portions of the record; a party's brief must cite to particular parts of the record to support each fact on which it relies. *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 850 (7th Cir. 2015) ("It is not the court's role or obligation to read an entire deposition or affidavit in an effort to locate the particular testimony a party might be relying on; the court ought to *know* what portion of a witness's testimony the party is invoking so that it can focus its

attention on that testimony and assess whether it is admissible and actually supports the fact or inference for which it is cited."); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials[.]"); *Sommerfield v. City of Chi.*, 863 F.3d 645, 650 (7th Cir. 2017) (noting that Rule 56 "requires [a party] to identify the relevant facts," and that the "judge rightly declined to wade through the voluminous record to find evidence on a counseled plaintiff's behalf").

Mr. Addie's brief fails to meet that requirement in many instances. For example, the following two paragraphs are representative of much of the factual section of his brief:

> Addie, Fine, and Foster had specific duties, not just titles, that simply could not be eliminated at an a[c]credited school in the State of Indiana. Schlottman gave these duties to Braun, Cebra, Darwish, Davis, Hammel, Walker, and Manno.
>
> Hammel, hired in October of 2014, was still teaching engineering classes in February of 2015. Unlike Addie, Hammel had no license, experience, or qualifications in Indiana to administer CASB. CASB eventually made Hammel Superintendent and paid him $78,000, which was more than what Addie made when he was in charge of the school. (Px21; Px22; Px24; Px29; Pxs 35–47).

[DE 31 p. 12]. The first paragraph has no citations at all. The second paragraph is followed by a string-cite that refers to a total of seventeen exhibits, which collectively span over 450 pages. That does not suffice. The Court need not scour the record to determine which parts of those materials support those assertions.

Elsewhere in the statement of facts, Mr. Addie offers entire paragraphs that consist of nothing but citations, with no explanation of what purpose the materials are being cited for. For example, one paragraph reads as follows:

> (Px40: 14-15, 17, 18, 61, 68-75, 77, 79, 80-84, 86-89, 92-102, 105, 107-109, 111-127, 132-138, 140, 142-144, 146-147 149-174-177, 189, 208, 212, 215, 224-225, 232-243, 249-281; Px43: 25, 30, 33-34, 36, 40-42, 50-51, 58-59, 61-62, 64, 66-93, 98-99, 101-112, 115-132, 135-138, 140-146, 151-165; Px44: 10, 20, 22, 24-25, 29, 35-51, 55-57, 60-74; Px41: 4-6, 9-16, 20-23, 30-36, 40-60, 68-73, 75, 86-91; Px42: 12, 17, 30-45, 49).

[DE 31 p. 14]. Without identifying the specific facts that Mr. Addie relies on in that mass of exhibits, that is no better than simply attaching those exhibits to a brief. Also, many of the deposition pages cited in that paragraph are not even part of the record. With that understanding, the Court addresses the motion on the basis of the facts that have been properly presented.

Career Academy School Corporation operates charter schools in South Bend, Indiana. In August 2011, it opened Career Academy of South Bend as a middle school with grades 7 through 9. Two years later, it expanded to a middle school with grades 6 through 8, and a high school with grades 9 through 12. In 2015, it opened another charter school, Success Academy of South Bend, with Kindergarten through 5th grade. Career Academy was founded by Lawrence Garatoni. In addition to being the school's founder and benefactor, Mr. Garatoni served as president of its board of directors. Along with his wife and their foundation, Mr. Garatoni contributed tens of millions of dollars towards purchasing and renovating their buildings and funding their operating expenses. Over the years, Mr. Garatoni forgave many of the loans he provided to the schools, but his goal was for the schools to become self-sufficient. The schools received funding from the state for each student that enrolled, and Mr. Garatoni desired for those revenues to at least cover the schools' operating expenses. The schools ran at a loss in their early years, though.

Chad Addie began his employment with Career Academy in 2011, when it was just beginning. His position at that time was Educational Manager, which was similar to an assistant principal position. Mr. Addie was 48 years old when he started. He had degrees in psychology and counseling and human services. He had also earned a post-graduate degree in school administration, and he had an Indiana building administrator license. In October 2013, Career Academy's principal resigned, and at Mr. Garatoni's request, Mr. Addie stepped into that

position until it could be filled permanently. Mr. Garatoni also asked Mr. Addie to apply for the position full time. Mr. Addie decided, though, that he preferred to focus on recruiting students instead of assuming management over the school. He thus recommended a principal with whom he had worked at a previous school, Paul Schlottman, who was offered and accepted the position. Mr. Schlottman began in December 2013, at which time Mr. Addie returned to his previous position. Mr. Schlottman was 46 years old at that time, and was about 3 years younger than Mr. Addie.

In early 2014, Mr. Addie discussed with Mr. Schlottman that he wanted to focus on school development, including public relations, fundraising, and recruiting new students. In mid-2014, they created a new position for him, entitled Director of Development, in which those functions became his focus, with a particular emphasis on student recruitment.[1] Mr. Addie was very successful in that aspect of his job. When he started with Career Academy, it had 160 students. Enrollment nearly doubled each year, and by the 2015–16 school year, Career Academy's enrollment exceeded 1,000 students, which was near its capacity. In support of that expansion, Career Academy had also hired numerous new employees.

In September 2015, Career Academy's finance committee met to review its budget for the year. The committee included Mr. Garatoni, Mr. Schlottman, and others. By that time, the school knew how many students had enrolled for the year. Since the state's payments to the school were based on the number of students, that meant that Career Academy also knew at that point what its revenues would be for the year. Based on those figures, the budget summary

---

[1] Mr. Addie also shared the assistant principal duties for several months beginning in late 2014 after the school's assistant principal passed away. Mr. Addie did not apply for that position on a full-time basis, and returned to his Director of Development position when a new assistant principal was hired.

4

showed that Career Academy's operating expenses would exceed its operating revenues by approximately $240,000. Accordingly, Mr. Garatoni instructed Mr. Schlottman that the school needed to reduce its expenses by that amount in order to break even. Mr. Garatoni told Mr. Schlottman that he should consider a reduction in force that would least affect the teaching of the students.

In response, Mr. Schlottman proposed a package of cuts that would reduce Career Academy's expenses by that amount. First, he proposed eliminating three positions: Mr. Addie's Director of Development position, a Director of Student Services position, and a teacher's aide position. Second, Mr. Schlottman proposed reducing his own salary by three percent and making cuts to employee bonuses. Finally, he proposed other cost-cutting measures like changing the school's cell phone and internet provider. Mr. Schlottman and Mr. Garatoni believed that it was appropriate to include Mr. Addie's position in those cuts because he was not involved in teaching, and because with enrollment near capacity, it was no longer necessary to devote so many resources to student recruitment. Mr. Garatoni approved each of those cuts, which were then implemented. After making those cuts, Career Academy's projected operating revenues equaled its operating expenses for the year.

Mr. Schlottman met with Mr. Addie in late September 2015 to inform him that his position was being eliminated and that his employment would terminate at the end of the month. Career Academy offered Mr. Addie a separation agreement, under which it would continue to pay his salary until January 2016 in return for a release of all claims. Mr. Addie declined to sign the agreement. Instead, he filed a charge of discrimination with the Equal Employment Opportunity Commission. After receiving a right-to-sue letter, he filed this suit. He asserts that he was discharged because of his age and that Career Academy retaliated against him in

violation of the Age Discrimination in Employment Act. He also asserts claims under state law for lost wages, breach of contract, and wrongful discharge. Discovery closed and Career Academy filed a motion for summary judgment, which is now ripe.

## II.  STANDARD OF REVIEW

Summary judgment is proper when the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations contained in its pleadings but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

## III.  DISCUSSION

Mr. Addie asserts claims under federal and state law. The focus of his complaint is that he was fired because of his age, in violation of the Age Discrimination in Employment Act. He

also claims that he was fired and suffered other adverse actions in retaliation for protected activity, again in violation of that Act. Finally, he asserts several claims arising under state law. Career Academy moves for summary judgment on all claims, and the Court considers each in turn.

A.     Age Discrimination

Mr. Addie first claims that he was fired because of his age. The Age Discrimination in Employment Act applies to employees who are at least 40 years old, and makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail, a plaintiff "must prove that, but for his age, the adverse action would not have occurred." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018). It is undisputed that Mr. Addie is protected by the ADEA—he was over 40 years old—and that he suffered an adverse action when Career Academy terminated his employment. The question is therefore whether Mr. Addie has offered evidence from which jury could conclude that he was fired because of his age.

A plaintiff can meet that burden by offering any combination of evidence that permits an inference of discrimination. *Skiba*, 884 F.3d at 719; *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (stating that the evidence "must be considered as a whole"). In evaluating that evidence, courts consider all of the evidence in combination to determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [protected characteristic] caused the discharge . . . ." *Ortiz*, 834 F.3d at 765. A plaintiff can also rely on the *McDonnell Douglas* burden-shifting framework. Under that approach, a plaintiff must offer evidence that (1) he is a member of a protected class, (2) he was meeting the defendant's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably." *Skiba*, 884 F.3d at 719;

*Carson v. Lake Cty., Ind.*, 865 F.3d 526, 533 (7th Cir. 2017). If the plaintiff establishes this prima facie case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action[.]" *Skiba*, 884 F.3d at 719. A plaintiff can then defeat summary judgment by offering evidence that the employer's explanation is pretextual, meaning it is a lie. *Id.* at 719–20; *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 894 (7th Cir. 2016). "'However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action *because of* [his] age.'" *Skiba*, 884 F.3d at 720 (quoting *Carson*, 865 F.3d at 533); *see also Ortiz*, 834 F.3d at 765.

Mr. Addie's arguments touch on both avenues for proving discrimination claims. The Court begins with the question of pretext, on which both parties focus. Career Academy asserts that it eliminated Mr. Addie's position for a facially neutral reason—to balance its budget. Once the 2015 school year began and Career Academy knew how much funding it would receive for the year, it discovered that its operating expenses exceeded its operating revenues by about $240,000. Mr. Garatoni instructed Mr. Schlottman that the school needed to reduce its costs by that amount to balance its budget. He further directed Mr. Schlottman to do so in a way that would have the least effect on the teaching of the students. In response, Mr. Schlottman proposed eliminating three positions, including Mr. Addie's; reducing his own salary and lowering employee bonuses schoolwide; and taking other cost-cutting measures. Mr. Garatoni approved that plan, and as a result, the school balanced its budget for the year.

Mr. Addie argues that this explanation is pretextual, but no evidence supports that argument. To begin with, there is no evidence that the reduction-in-force was itself pretextual. Mr. Addie notes that Career Academy hired dozens of new employees in the preceding years,

8

which he argues shows that this was not a true reduction in force. Career Academy multiplied in size over that time, though. According to Mr. Addie's own numbers, Career Academy had 160 students in 2012; 280 in 2013; 523 in 2014; and 1,067 in 2015. [DE 31 p. 5–6]. Career Academy naturally had to hire numerous new employees over that time to accommodate that growth.

But there is no dispute that, once it crunched the numbers at the beginning of the 2015 school year based on its actual enrollment, Career Academy faced a budget shortfall of $240,000. Nor is there any dispute that Mr. Garatoni gave the direction to balance the budget; that Mr. Schlottman put together a package of cuts that included eliminating three positions, along with other costs; and that those cuts succeeded in balancing the budget.[2] No juror could find that the reduction-in-force was pretextual.

Nor is there evidence that the elimination of Mr. Addie's position as part of those budget cuts was pretextual. Mr. Garatoni directed that the cuts should have the least effect on teaching students. In his position as Director of Development, Mr. Addie was not a teacher; his primary roles involved fundraising, public relations, and recruiting new students. Mr. Addie argues that he had some other administrative duties, too, but he does not attempt to identify any other positions that could have been eliminated with less of an impact on teaching and as much of a reduction in costs. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 724 (7th Cir. 2008) ("In deciding which employee to let go, [an employer] could weigh the monetary savings of eliminating one salary with the considerations of whom the [employer] needed more and who could be replaced more easily."). Instead, he notes that Career Academy hired over 60 new

---

[2] Mr. Schlottman also reduced his own salary by three percent as part of those cuts. It would be quite unusual for someone to construct a pretext that includes reducing their own salary.

9

employees under the age of 40 from 2014 to 2017. He sees this as a plan to first hire younger employees and then later fire older employees under the pretext of a reduction in force.

Divorcing that number from its context deprives it of any significance, though. Without also considering the number of older workers hired and the make-up of the qualified applicant pool, the number of younger employees hired sheds no light on whether Career Academy was engaging in discrimination. The same document upon which Mr. Addie relies shows that Career Academy hired scores of employees over the age of 40, which refutes his suggestion that Career Academy was only hiring younger employees. And again, without comparing the number of younger employees hired to the percent of younger people in the pool of qualified applicants, which Mr. Addie does not do, there is no reason to believe those younger employees were hired as part of a pattern of discrimination. *See Skiba*, 884 F.3d at 723–24 (finding no evidence of discrimination where the plaintiff offered "a table listing the names and ages" of younger workers who were hired, but provided "no amplifying detail of the employees' qualifications or employment history").

Mr. Addie also claims Career Academy's explanation was pretextual because he was not given the chance to bump other younger employees from their jobs. He offers no reason to infer discrimination from that fact, though. No workers—younger or older—were ever given the option to bump other employees. And the ADEA does not require employers to give preference to older workers; it only bans discrimination against older workers. Mr. Addie may believe that it would have been wiser or fairer to give him preference over other employees in light of his experience, qualifications, or contributions to Career Academy. But he has not shown that failing to give him "bumping rights" had anything to do with his age, and courts do not judge wisdom or fairness of an employer's practices. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir.

2006) ("Federal courts have authority to correct an adverse employment action only where the employer's decision is unlawful, and not merely when the adverse action is unwise or even unfair. We do not sit as a super-personnel department with authority to review an employer's business decision . . . ."); *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006) ("It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law. Poor personnel management receives its comeuppance in the market rather than the courts.").

Mr. Addie also argues that, after his position was eliminated, his duties were absorbed by younger, less qualified employees. If true, that could satisfy the similarly-situated element of the *McDonnell Douglas* framework, and could also provide circumstantial evidence of discrimination apart from that framework. *See Petts v. Rockledge Furniture, LLC*, 534 F.3d 715, 725 (7th Cir. 2008) (noting that in "a mini-RIF [reduction in force] case, where the dismissed employee's duties are absorbed by another employee or employees rather than eliminated," the similarly-situated element "requires proof that the plaintiff's duties were absorbed by employees not in the protected class"). Mr. Addie's brief asserts in multiple places that younger employees absorbed his duties, but he never offers a citation to evidence to support that assertion. He does not identify who those employees were or which of his duties they absorbed, either. This argument thus fails for lack of support. In addition, Mr. Addie did not contest Career Academy's assertion that some of his duties—including fundraising and public relations—were absorbed by an employee who was 44 years old. Thus, even assuming that other duties were absorbed by younger employees, this comparison does not point to age as a reason for his discharge. *Petts*, 534 F.3d at 726 (holding that the plaintiff failed to show that similarly situated employees were treated better than her in support of her sex discrimination claim, since "[e]ven if some of her

11

duties were absorbed by male employees, as she claims, some of them were absorbed by women").

Mr. Addie next objects that the separation agreement he was offered required him to release any age discrimination claims in order to receive severance. However, he fails to show how that has any connection to whether he was fired because of his age. The separation agreement offered Mr. Addie about three-and-a-half months of pay, in return for which he would have to release Career Academy "from *any liability* based on [his] employment with the School or the termination of such employment."[3] [DE 34-7 (emphasis added)]. There is nothing improper about that. Mr. Addie was not entitled to severance pay in the first place—Career Academy was offering that pay as consideration for a release of claims—and Mr. Addie does not suggest that Career Academy offered severance to any other employees without a full release of liability. The separation agreement thus offers no support for a finding that he was discharged or otherwise discriminated against because of his age.[4]

The remaining evidence Mr. Addie cites is insubstantial. Mr. Addie offers various facts to the effect that he was a good employee, such as that he was previously chosen to serve as acting lead administrator, he had recently received a raise and a bonus, and he was highly thought of by parents, staff, and students. None of that speaks to why he was let go, though, or suggests that that had anything to do with his age. And if anything, giving Mr. Addie a raise and a bonus only

---

[3] The release also included a revocation period, as required by the Older Workers Benefit Protection Act.

[4] Mr. Addie argues that, in response to a separate charge brought by a different employee, the EEOC found the separation agreement to be improper. The EEOC did not suggest that the agreement was evidence of discrimination, though. The objection the EEOC has raised to releases of employment claims is that they could tend to chill employees from filing charges or participating in EEOC proceedings—it does not claim that such releases are discriminatory or retaliatory. *EEOC v. CVS Pharmacy, Inc.*, 809 F.3d 335, 341 (7th Cir. 2015).

months earlier, and appointing him acting lead administrator a couple years earlier, suggests that his age was not held against him.[5] Mr. Addie also notes that two full-time lead administrators were paid more than he received while he was acting lead administrator. One of those individuals was almost his same age, though, so age does not explain the disparity. Finally, Mr. Addie offers some general assertions that Career Academy favored younger employees over older ones, or was engaged in a plot to fire older employees instead of younger ones. But assertions at that high a level of generality do not suffice at the summary judgment stage. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 991 (7th Cir. 2016) (declining to consider "sweeping generalizations about the way the protected class was treated," without "specific facts upon which to conclude [the employer] treated older [employees] in a discriminatory manner"); *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) (refusing to consider assertions that the employer treated the protected group "more harshly" than others, without specific details to support the assertions, as "conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment").

Viewing all of this evidence collectively, *see Ortiz*, 834 F.3d at 765, no jury could reasonably conclude that Mr. Addie was fired because of his age. Mr. Addie has not rebutted Career Academy's stated reason for terminating his employment or otherwise offered evidence suggesting that his age caused that decision. He cannot survive summary judgment under the *McDonnell Douglas* framework, either. He has not shown that he was treated less favorably than similarly situated younger workers or that his duties were absorbed by younger workers, nor has

---

[5] Mr. Addie also asserts that Career Academy stated to the EEOC that he was fired because of his performance, but he never cites particular evidence to support that assertion.

he offered evidence from which a jury could find that Career Academy's explanation was a lie. Accordingly, the Court grants summary judgment on the age discrimination claim.

**B.     Retaliation**

Mr. Addie also claims that Career Academy terminated his employment in retaliation for his protected activity. To establish a retaliation claim under the ADEA, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse actions; and (3) there is a causal connection between the two. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012).

Mr. Addie first argues that he was fired in retaliation for comments he made to Mr. Schlottman several months earlier about the school's hiring practices. His brief does not provide a specific citation to evidence of this alleged protected activity. From the citations in Career Academy's brief, though, it appears that this claim is based on the following testimony by Mr. Addie: "I brought that concern to Mr. Schlottman beginning as early as late spring, June, that we were making hires of inexperienced staff, young staff, saying why are we hiring all these people when I don't think we need them . . . ." [DE 36 p. 160].

Even assuming this somewhat ambiguous comment constituted protected activity, there is no evidence connecting it to Mr. Addie's discharge. Mr. Addie argues that the timing is suspicious, but at least three months separated this activity from his discharge. And in the interim, Career Academy gave Mr. Addie a pay raise and a bonus. Mr. Addie argues that the timing makes sense because Career Academy needed him to continue recruiting students, so it wouldn't have fired him before the school year began. Even if so, the timing still doesn't connect the discharge to the comments he made months earlier, as the two events are not close enough in time to suggest that one is connected to the other. In addition, suspicious timing alone is rarely sufficient to support an inference of retaliation. *Hutt v. AbbVie Prods., LLC*, 757 F.3d 687, 693

(7th Cir. 2014) ("[M]ere temporal proximity is not enough to establish a genuine issue of material fact."); *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008) (stating that suspicious timing would only create an inference of causation, if ever, for "matters occurring within days, or at most, weeks of each other"). And as already discussed, Mr. Addie has not undermined Career Academy's explanation that it eliminated his position to balance its budget.

Mr. Addie also argues that he engaged in protected activity by refusing to sign the separation agreement that would have waived his claims, and by filing an EEOC charge. He does not identify any adverse actions that he suffered as a result of that activity, though. Both of those actions occurred after he was discharged, so he could not have been discharged in retaliation for that activity. He also asserts that after he refused to sign the separation agreement, Career Academy offered him a second agreement that was even less advantageous. He never provides a citation to evidence in support of that claim, though.[6] And if he refused to sign even the first separation agreement, he could not have been harmed by Career Academy offering a second, less beneficial agreement. Finally, as already discussed, Mr. Addie was not entitled to severance in the first place, so Career Academy was not retaliating by refusing to pay severance if Mr. Addie declined to accept the separation agreement. *CVS Pharmacy*, 809 F.3d at 341 (holding that conditioning benefits on an agreement to release claims does not constitute actionable retaliation); *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 793 (7th Cir. 2005) ("An employee who refuses to sign a release will not be offered the same deal as a terminated employee who is willing to sign the release."). The other facts Mr. Addie offers are not properly supported by

---

[6] Mr. Addie submitted two separation agreements in response to the motion for summary judgment, but did not provide any foundation for either of those agreements, and one of them states that it was offered to Sarah Fine, not Mr. Addie. [DE 34-6].

citations to the record and do not connect any protected activity to any adverse action anyway. Therefore, the Court grants summary judgment as to this claim.

**C.     State Claims**

In addition to his federal claims, Mr. Addie brought claims under state law for lost wages, breach of contract, and wrongful discharge. Having resolved the federal claims over which the Court has original jurisdiction, the Court must decide whether to maintain supplemental jurisdiction over the state claims. Under 28 U.S.C. § 1367, a district court "may decline to exercise supplemental jurisdiction" over state-law claims if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Although the decision is discretionary, 'when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.'" *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)). "The presumption is rebuttable, 'but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law.'" *Id.* (quoting *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)).

Career Academy urges the Court grant summary judgment against the state claims even if the federal claims have failed. It has not overcome the presumption in favor of relinquishing supplemental jurisdiction, though. Mr. Addie's state claims relate to his employment, but they do not depend on his federal claims. Because those claims rely on principles of state law and are not governed by the resolution of the federal claims, it is most appropriate to allow the state courts to address those claims. *Hansen v. Bd. of Tr. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)."

(internal citations omitted)). The Court therefore relinquishes supplemental jurisdiction over the state claims.

## IV. CONCLUSION

For those reasons, the Court GRANTS the motion for summary judgment in favor of Career Academy as to Mr. Addie's claims for age discrimination and retaliation. The Court also relinquishes supplemental jurisdiction over his state-law claims, which are dismissed without prejudice. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: March 27, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court